IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LORENZO JOHNSON,

                              Plaintiff,                      OPINION AND ORDER

    v.

                                                                 13-cv-113-wmc

CATHY A. JESS, and LT. BRIAN GREFF,

                              Defendants.

---

    *Pro se* plaintiff Lorenzo Johnson was given leave to proceed with this § 1983 action against two employees of the Wisconsin Department of Corrections for allegedly violating his constitutional right of access to courts and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, by banning inter-institutional, inmate-to-inmate legal correspondence and then failing to offer an adequate alternative for Johnson to access other inmates for legal assistance. Before the court now are the parties' cross-motions for summary judgment. (Pl.'s Mot. (dkt. #15); Defs.' Mot. (dkt. #19).) As explained more fully below, the court will grant defendants' motion for summary judgment, because: (1) plaintiff failed to put forth sufficient evidence for a jury to find that the banning of the policy caused his alleged injury or that the policy change was not reasonably related to a legitimate penological interest; and (2) plaintiff failed to place defendants on notice of his need for accommodation.

PRELIMINARY MATTER

Before turning to the parties' cross motions for summary judgment, the court must first address two motions for reconsideration filed by plaintiff. (Dkt. ##31, 35.) Previously, Johnson sought a 60-day extension to file an opposition to defendants' motion for summary judgment and a reply in support of his own motion. (Dkt. #28.) The court granted in part and denied in part that request. The court found good cause for extending the deadline for Johnson to file an opposition brief, but because the deadline for Johnson to file an optional reply brief in support of his own motion had already lapsed, the court denied that request in the absence of excusable neglect. (7/30/15 Order (dkt. #29).)

In his motions for reconsideration, Johnson now offers delays in receiving legal correspondence as an excuse,[1] but still fails to explain how these delays impaired his ability to file a timely reply or at least to seek a timely extension of the filing deadline. As to the latter, plaintiff also now contends that he mailed his motion for an extension on July 21, 2015, even though it was not received by the court and docketed until July 27. Assuming this is true, Johnson's deadline for filing his reply brief was July <u>20</u>, the day *before* he purportedly sought an extension, meaning his motion for an extension would still be subject to an excusable neglect standard. Of course, there is also no reason Johnson could not have advanced these excuses in his original motion.

---

[1] In his original motion, Johnson had claimed delays caused by having to mail back and forth between himself and an inmate at another institution who was assisting him, but now claims delays and obstruction by WCI staff.

2

Even more telling, however, is that Johnson was not prejudiced by any arguable error in not letting him file a reply. On the contrary, Johnson was given more time to file his opposition to *defendants'* cross-motion for summary judgment and encouraged to raise any arguments he would have in his reply, all of which the court considered before deciding the parties' cross-motions for summary judgment. Indeed, defendants themselves submitted a *combined* brief in opposition to plaintiff's motion for summary judgment and in support of their own motion, meaning plaintiff was already given the chance to respond/reply as he saw fit.

UNDISPUTED FACTS[2]

**A. The Parties and Others**

Plaintiff Lorenzo Johnson is an inmate housed in the segregation unit at the Waupun Correctional Institution ("WCI") for all times relevant to the present complaint. WCI is a maximum-security institution located in Waupun, Wisconsin.

Defendant Cathy Jess is employed by the Wisconsin Department of Corrections ("DOC") as the Administrator of DOC's Division of Adult Institutions ("DAI"). Defendant Brian Greff is employed by the DOC as a Correctional Program Supervisor in WCI. In addition to the named defendants, other individual state employees play a material role in plaintiff's claims. Kristine Cismoski is employed by the Wisconsin Department of Health Services ("DHS") as an Office Operations Associate at the Wisconsin Resource Center. Among her other duties, she is responsible for the

---

[2] The following facts were drawn from the parties' submissions and assumed to be material and undisputed unless otherwise noted.

maintenance of business transaction and medical records. Nicole Kamphius is employed by the DOC as the Financial Program Supervisor who handles ADA Coordinator duties in WCI, a role she has held since 2011. Daniel A. Westfield is the Corrections Security Chief for the DAI for all times relevant to this complaint. In that capacity, Westfield was responsible for developing, coordinating and implementing security policies and procedures.

### B. 2012 Policy Change to "Legal Route" Mailing System

As DAI Security Chief, Westfield was involved in a Conditions of Confinement workgroup that reviewed policies and procedures across institutions. This workgroup was made up of wardens, deputy wardens and security directors from various DOC institutions. One procedure the group reviewed was the "legal route" mailing. Some of the Wisconsin DOC maximum-security institutions allowed inmates to send legal documents via *inter*-institution mail simply by writing "legal" on the outside of the envelope.

In particular, members of the workgroup reviewed instances where inmates abused that policy by sending personal communications or contraband items into segregation units marked as legal but not relating to any legal matter. On the flip side, the workgroup also considered how to address better inmate complaints that legal route correspondence was being lost or intentionally mishandled by staff. The workgroup also found instances where inmates were performing "legal work" in exchange for payment, a potentially criminal offense. The group further discussed how regular staff members

4

reviewed legal route mail as compared to how mail room staff members reviewed mail otherwise coming into or going out of the institution. In this respect, the workgroup was specifically concerned about inmates attempting to intimidate staff members reviewing legal route mail by threatening to sue them.

Based on its finding, the workgroup determined that the best course of action was to discontinue legal route, inter-institution mailing procedures for all Wisconsin institutions. Following this change, inmates would be required to utilize the U.S. Mail for all correspondence with other inmates and that mail would be reviewed and inspected by regular mail room staff members who review correspondence as part of their daily work activities. The workgroup believed this change would lead to greater consistency and review of inmate correspondence, which in turn would help resolve inmate complaints about mishandling of inmate-to-inmate legal correspondence. The workgroup also believed that the change would improve detection of contraband and prevent other violations of prison policies.

Defendant Cathy Jess and DOC legal counsel both approved this policy change effective September 30, 2012. On August 27, 2012, Jess sent a memo to all staff *and* inmates explaining this change. (Compl., Ex. A (dkt. #1) p.5.)


### C. Johnson's Use of Legal Route System

Before the change in policy, Johnson had used the legal route system to obtain assistance from "inmate para-legals," especially when housed in segregation. (Pl.'s PFOFs (dkt. #17) ¶ 7.) Material to this case, Johnson filed a 2012 petition for a state writ of

5

certiorari challenging the finding of guilt in a disciplinary proceeding that resulted in a sentence of segregation. Johnson contends -- though without proper support in the form of a declaration -- that he used another inmate, Vances H. Smith, who Johnson describes as a "paralegal," to assist him in filing the petition.[3] On November 1, 2012, Johnson received a letter from the Dane County Clerk of Court indicating that his petition would not be filed due to the fact that certain required documents were not attached. The letter also stated that he had 21 days to comply with the filing request.

Because the new mailing policy was in place, however, Johnson's access to Smith was now limited.[4] In particular, following the new policy, Johnson attempted to mail the letter from the Dane County Clerk on November 6, 2012, using the U.S. Postal Service, but his disbursement request for $.65 in postage was denied, apparently because there was not enough money in his account. (Johnson Decl., Ex. A (dkt. #18-1).) In addition, one of the documents requested by the Dane County Clerk of Court was Johnson's inmate trust account statement for the past six months. In order to obtain a copy of that statement, however, inmates are required to pay $0.15 per page. Because he was unable

---

[3] Defendants take issue with Johnson's failure to cite any evidentiary material in support of this and some other proposed facts, relying instead on allegations in the complaint itself. Defendants are certainly justified in pointing out this failure, but the court will nonetheless give Johnson, as a *pro se* plaintiff, the benefit of allegations in his complaint to the extent he could attest to them from his personal knowledge or were undisputed by defendants. Moreover, plaintiff attached some documentation to his complaint, including court records from the Dane County Circuit Court. (*See* Compl., Exs. C, F (dkt. #1-1) pp.6-7, 12-13.)

[4] Both sides fail to address why this is so since the new policy supposedly only addresses "*inter*-institution" mail routing and Smith attests that he was himself an inmate at WCI throughout the relevant period in this case (dkt. #42), leading the court to conclude that Smith's declaration is wrong *or* the new policy actually changed "*intra*-institution" mailing routes, despite its express terms. The latter possibility seems more likely, weakening the state's justification for the policy itself, but does not change the outcome here for reasons explained in the court's opinion below.

to pay this copy fee, Johnson's request for his trust account statement was also denied. As for the other required documents, Johnson claims the instructions in the Clerk's letter were too complicated for him to understand, although he did his best to comply and submitted the additional requested documents, with the exception of the inmate trust account statement.

On January 7, 2013, the Dane County Circuit Court entered an order dismissing Johnson's petition for certiorari on the ground that he failed to provide certain documentation, including a certified copy of his trust fund account for the six months preceding the date of the petition. (Compl., Ex. F (dkt. #1-1) pp.12-13.) The record is unclear as to what, if any, attempts Johnson made to seek reconsideration from the state circuit court in light of these new obstacles.

### D. Available Alternative Legal Resources

Inmates in segregation are provided access to legal materials during "legal recreation time."[5] To attend legal recreation, an inmate must submit a request slip, along with any required legal documentation to the Segregation Office Operations Associate. Inmates are allowed to submit one request per week, although it appears that additional accommodations may be made if an inmate has a filing deadline within 45 days of his request. Legal recreation takes place in the segregation electronic law library, which includes a guide for how to use the library posted on the wall. These sessions are

---

[5] Inmates in control/observation or adjustment status are not permitted to use the law library.

intended to be completed solely by the inmate requesting legal recreation. A legal recreation period can last up to 60 minutes in length.

An inmate can also write the librarian to ask for forms, procedures and copies, but segregation does not have its own librarian. Before January 1, 2015, inmates housed in segregation were given two pieces of paper and a stamped envelope per week.[6] For anything more, an inmate must pay or obtain funds from family or friends. Indigent inmates may also apply to DAI for a legal loan up to $100 annually for supplies, photocopies, and postage for litigation purposes. To request photocopies of legal materials, inmates similarly must complete a request, along with a signed disbursement request to pay for the copies.

Johnson submitted two requests for a legal loan in 2012, including one on December 11th. However, both of Johnson's 2012 requests were denied due to "his recent spending patterns, including canteen purchases, outside purchase and funds to family; and other receipts, including receipt of monies and/or supplies from outside resources." (Johnson Decl., Ex. A (dkt. #17-1) pp.3-4.)[7]

---

[6] Although not relevant here, defendants advise that even this minor allowance has been discontinued, which is obviously very problematic for truly indigent inmates needing relief from courts going forward.

[7] In addition to these services, defendants also represent that inmates, including Johnson, may access legal services through program offered by the UW Law School Frank Remington Center and may request representation through the State Public Defender's office, although this is more than slightly disingenuous since (as Smith also attests) neither, to the court's knowledge, would take on a conditions of confinement case like that Johnson was pursuing in state court.

### E. Financial Resources

As a Financial Program Supervisor, Kamphius is responsible for maintaining WCI's inmates' accounts on the Wisconsin Inmate Trust System. According to those records, Johnson received a $10 Western Union transfer from a family member or friend deposited into his regular account on October 15, 2012. On October 29, an additional $50 was deposited to his regular account. Johnson does not dispute that these money transfers were placed in his account, but contends that these funds were actually deposited in his account by another inmate's family members or friends for that inmate's use. Johnson submits a declaration from that inmate in support. (Barrett Decl. (dkt. #41) ¶¶ 2-3.) The same inmate further avers that the funds were used by Johnson to purchase items from the canteen, which were then passed along to him. (*Id.* at ¶ 4.)

### F. Johnson's Evidence of Disability

Finally, Johnson contends that he suffers from a mental disability and reads at a third grade level. In support, Johnson directs the court to a psychological services report, dated January 25, 2010, in which Ana Garcia, M.A., details Johnson's injury as a result of shooting himself in the head, although Garcia notes that there are "discrepant evaluations in his medical records as to whether Mr. Johnson suffered brain damage as a result of his head injuries." (Compl., Ex. A (dkt. #1-1) p.1.) Garcia also notes that Johnson's attending psychiatrist diagnosed him with post-traumatic stress disorder, learning disorder and antisocial personality disorder. (*Id.* at 2.) Garcia further noted that the brevity of Johnson's responses were "possibly due to his limited vocabulary and

cognitive capacity." (*Id.*)  Johnson was given various tests.  A full scale IQ was estimated to be 75, which placed him in the bottom 5% of those tested, and corresponds to well below average range of intellectual functioning.  (*Id.* at 3.)  Finally, Garcia confirms that Johnson's reading level corresponded with that of a third grader.  (*Id.* at 3.)

### G. Processing of Inmate ADA Accommodation Requests

As the ADA Coordinator, Cismoski is responsible for receiving and processing ADA accommodation requests from WCI inmates.  In conjunction with WCI's health services unit, the ADA Coordinator determines whether the inmate is in need of an accommodation.  Inmates request accommodation by filling out DOC-2530, Reasonable Modification/Accommodation Request form, and submitting it to the ADA Coordinator.  Kamphius found no record of Johnson having submitting a request relating to any change in inmate-to-inmate legal correspondence or otherwise.  Johnson does not dispute this, but contends that he was never given *oral* notice of the procedures for seeking accommodations and further contends that he had no such knowledge of this procedure.  Presumably, Johnson would also contend that he did not have the literacy skills to read a written notice.

## OPINION

As the court noted in its opinion and order granting Johnson leave to proceed on his access-to-courts and Rehabilitation Act claims, this would be a difficult case for him to pursue in light of a combination of facts:  Johnson was attempting to challenge a

disciplinary action that placed him in segregation; segregation presents certain challenges to accessing legal resources to pursue claims generally; reading at a third grade level, Johnson has significant cognitive limitations further amplifying the challenges; and Johnson had limited resources to gain access to so-called "inmate paralegals" for help in pressing his legal claims, whether through the U.S. mail system or otherwise. Given these significant challenges, it is not surprising that Johnson's proof has fallen short on summary judgment, but even giving Johnson the benefit of all doubt as a *pro se* litigant, particularly facing these hurdles, the defendant are entitled to summary judgment for the reasons explained below.

I. **Access to Courts Claim**

Johnson claims that defendants violated his constitutional right of access to the courts by banning an inter-institutional, inmate-to-inmate legal mail route. "[T]he fundamental constitutional right of access to courts requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). To demonstrate such a claim, plaintiff must establish both that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim," and that he suffered an "actual injury," meaning that "a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *see also Eichwedel v. Chandler*, 696 F.3d 660, 673 (7th Cir. 2012) ("[A]n inmate may prevail on a right-of-access claim only if the official actions at

issue hindered his efforts to pursue a legal claim." (internal citation and quotation marks omitted)).

On this record, there appears sufficient evidence for a reasonable jury to find that Johnson suffered an injury -- his petition was dismissed due to a failure to file necessary documents -- and that his petition was not frivolous -- he was seeking to challenge a disciplinary proceeding that resulted in him being sentenced to segregation.[8]  However, defendants raise two other bases for directing judgment in their favor.  First, defendants contend that Johnson cannot demonstrate a causal link between the challenged policy banning an inter-institutional legal mail route and his injury.  Second, defendants argue that even if a causal link existed, the policy banning the legal mail route was reasonably related to a legitimate penological interest.

As to the causal link, defendants contend that Johnson had adequate legal access through segregation's electronic law library, as well as other resources, and that he had funds available to pay for his trust account statement and/or postage to communicate with his purported inmate paralegal Smith through the U.S. postal system.  In response, plaintiff fails to raise a genuine issue of material fact as to the availability of the law library and other resources, including forms available from the prison librarian, opportunities for assistance from other inmates and requesting additional time or indulgence from the state court in light of restrictions on his ability to meet deadlines or filing requirements.  Of course, given plaintiff's particular cognitive and educational limitations, including limited literacy, the law library and other written materials may

---

[8] Or, at least in moving for summary judgment, defendants do no argue that Johnson's state court petition was otherwise frivolous.

12

have been of limited use. Moreover, given the particular challenges posed by plaintiff's certiorari action, access to the law library likely would not have addressed the confusion he had about obtaining required documents and filing those documents with the clerk's office.

The real cause of his injury, however, appears to be plaintiff's claimed lack of financial resources. Johnson's inmate trust account statement for the relevant period, however, shows funds that plaintiff could have accessed to pay for copies and postage. While plaintiff contends that the money in his account was not truly his to use, even if true, there was no way for defendants or others involved in making legal loan decisions to know that. (Indeed, plaintiff's claimed arrangement to funnel money to another inmate through him likely violated prison policy in its own right.) Whatever the arrangement plaintiff may have had with another inmate, defendants are blameless for failing to provide him with a legal loan to pay for necessary copies of his inmate trust account statement and postage when by all reasonable appearances he had the financial means to do so himself.

Perhaps plaintiff has presented sufficient evidence from which a jury could find that the banning of the legal mail route at least contributed to the dismissal of his state lawsuit, and that there were inadequate alternative legal resources available to him, but the jury would also have to find that he suffered from such significant cognitive or educational limitations that the policy banning a legal mail route impacted Johnson so uniquely that he was incapable of seeking (or at least getting) further dispensation from the state court, whether as to a deadline or additional filing requirements. While this

finding seems implausible given plaintiff's other submissions in state and federal court, plaintiff has a larger problem in proving causation: by his own admission, the new policy did not bar his access to the state court. Rather, plaintiff's undisclosed manipulation of funds in his prison trust account did since contemporaneous institutional documents show that it was the apparent availability of these funds that resulted in his being denied money for postage to mail communications to Smith and/or the court, or to obtain copies of documents requested by the court. On this record then, the court concludes that no reasonable jury could find that Johnson's injury was caused by the discontinuing of the legal mailing route policy.

As for defendants' other basis for summary judgment, the Supreme Court again explained in *Lewis* that "a prison regulation impinging on inmates' constitutional rights 'is valid if it is reasonably related to legitimate penological interests.'" *Lewis,* 518 U.S. at 361 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Here, plaintiff failed to raise *any* challenge to defendants' evidence that the policy was adopted for a number of legitimate penological reasons, including mitigating against inmates' complaints of lost mail, uniformity of policy across institutions, and improved, consistent screening for contraband. *See also Goff v. Nix*, 113 F.3d 887, 890-92 (8th Cir. 1997) (upholding policy prohibiting legal correspondence between prisoners at different facilities on the basis that the policy furthered security and prevented the transfer of contraband). In the face of that unrebutted evidence, no reasonable jury could find that the policy banning inter-institutional, inmate-to-inmate legal correspondence failed to further a legitimate

interest. Accordingly, defendants are entitled to summary judgment on Johnson's access-to-courts claim.

Because plaintiff has failed to advance sufficient evidence of causation (*i.e.*, a direct relationship between the policy and his injury), the court is granting summary judgment to defendants here, but is obviously not deciding whether another plaintiff under different facts *might* be able to make such a showing. Although not material to plaintiff's claims dating back to events in 2012, the court is particularly troubled by a 2015 change in the related administrative rule that removes even two pieces of paper and a stamped envelope from weekly "necessities" of inmates housed in disciplinary separation. (*See* Greff Decl. (dkt. #24) ¶ 26 (citing Wis. Admin. Code § DOC 303.73(2)).) Coupled with the banning of the legal mail route challenged in this lawsuit, Wisconsin inmates housed in segregation are apparently now required to use the U.S. mail for *any* communication except with guards and inmates in the segregated wing. Moreover, if lacking funds to pay for paper, an envelope or postage, an inmate would appear to have no possibility of communicating outside segregation, unless deemed indigent and eligible for a legal loan. Given the regularity with which this court sees inmates complain about the denial of a legal loan, the court can find little solace in this possibility. In anything, the combination of these rule changes amplifies the power of those within an institution tasked with determining whether an inmate is actually indigent. Again, while this administrative rule change is not material to the present action, having occurred well after the events at issue in this lawsuit, the court is compelled to encourage the Department of Corrections to explore whether these changes

may hinder the rights of inmates housed in segregation to access courts, or at least create an uncomfortable opportunity to suppress the timely discovery of serious violations within an institution.

**II. Rehabilitation Act Claim**

Johnson was also granted leave to challenge defendants' prohibition on the legal mail route under the Rehabilitation Act, 29 U.S.C. § 794(a).[9] On summary judgment, defendants argue that Johnson's failure to request an accommodation dooms this claim. In particular, defendants point to Johnson's failure to submit a DOC form requesting an accommodation to the ADA Coordinator.

Reviewing claims in the employment context, the Seventh Circuit has held that the plaintiff "must normally request an accommodation before liability under the ADA attaches." *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000). When mental disabilities are at issue, however, the Seventh Circuit held that something less is required, although a plaintiff "must meet the employee halfway." *Id.* As the defendants implicitly acknowledge, perhaps the demand that Johnson complete DOC-2530 Reasonable Modification/Accommodation request form proves too much under a similar standard, especially in light of Johnson's literacy challenges. Still, Johnson must submit *some* evidence that defendants were aware of his need for an accommodation. This he has not done.

---

[9] Defendants were correct to construe this claim as against the Department of Corrections since individuals are not proper defendants under the Rehabilitation Act or ADA. (Defs.' Br. (dkt. #20) 12 (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) ("[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA.")).)

The only evidence in the record of defendants' awareness of how the legal mail policy change impacted Johnson personally is his administrative grievance, in which it appears he only "complained that he was indigent and could not afford to mail his legal work to an inmate paralegal, and "never mentioned his asserted mental disabilities." (Defs.' Combined Br. (dkt. #20) 14.)[10]  The absence of this latter complaint is important since, as previously discussed, Johnson's claim of indigency is undermined by his now admitted, yet then undisclosed, manipulation of moneys in his trust account.

While the court concludes that Johnson failed to put WCI (or the Department of Corrections more generally) on notice of his need for an accommodation in order for him to pursue a state court certiorari petition challenging his sentence to segregation, this finding does not foreclose relief in the future.  If Johnson remains in need of legal support from an inmate paralegal going forward, he could and should pursue an accommodation through the DOC.  The court will not, however, prejudge whether such an accommodation would, or even should, be granted.

ORDER

IT IS ORDERED that:

1) plaintiff Lorenzo Johnson's motions for reconsideration (dkt. ##31, 35) are DENIED;

2) plaintiff's motion for summary judgment (dkt. #15) is DENIED;

---

[10] Defendants represent that the offender complaint is attached to Johnson's complaint in this lawsuit, but the attachments only consist of the prison's response to the complaint, not the complaint itself.  (See Compl., Ex. E (dkt. #1-1) pp.9-11.)  In his opposition brief, however, plaintiff does not dispute that he failed to raise his cognitive limitations and other mental health issues in the grievance itself.

3) defendants Brian Greff and Cathy A. Jess's motion for summary judgment (dkt. #19) is GRANTED;

4) defendants' motion to stay (dkt. #47) is DENIED AS MOOT; and

5) the clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 17th day of December, 2015.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge